Y. W. WILLIAMS V. A. J. McCONAUGHEY.

FILED JUNE 8, 1899.   No. 8928.

1. **Instructions:** ISSUES. Instructions should be confined to the is-
sues in the case.

2. ——: CONFLICTING STATEMENTS. An erroneous instruction is
not cured by merely giving another on the same subject stating
the rule correctly.

ERROR from the district court of Hamilton county.
Tried below before WHEELER, J. *Reversed.*

*Hainer & Smith,* for plaintiff in error.

*W. A. Prince* and *Howard M. Kellogg,* contra.

NORVAL, J.

This was replevin by Y. W. Williams to recover a stock
of merchandise seized by the defendant, as sheriff, under
certain writs of attachment issued in favor of the cred-

itors of Thomas Upton. The verdict was for the defendant, and to reverse the judgment entered thereon is the purpose of this proceeding. There was evidence introduced on behalf of plaintiff tending to show that he was engaged in the mercantile business at the town of Bromfield, and on July 7, 1893, being the owner of the stock of goods in controversy, sold the same to his brother-in-law, Thomas Upton, for $1,213.08; that of this sum $200 was at the time paid in cash, and Upton gave Williams his promissory note for the balance, due in three months, without interest; that Upton took possession of the stock and carried on the business until December 26, 1893, and at that time, being unable to pay plaintiff, he sold the stock to Williams for $1,295.07, its full invoice price, receiving $236 cash, his said note for the sum of $1,013.08, and a book account of $46. Possession of the goods was given plaintiff. While Upton was carrying on the business he became indebted to the attaching creditors for goods purchased. The resale of the goods to plaintiff is assailed as being fraudulent, and the testimony upon that issue is conflicting. It was ample to sustain a verdict for either party. This is conceded by the plaintiff.

It is insisted that the court erred in giving instruction No. 16 on its own motion, a copy of which follows: "The defendant charges fraud in the transactions of the sale and delivery of the stock of goods in controversy by the plaintiff to his brother-in-law, Thomas Upton, and the sale and transfer of said stock of goods by Thomas Upton back to the plaintiff. The burden of proof is upon the defendant to establish that one or both of such transactions were fraudulent, by a preponderance of the evidence, to entitle defendant to a verdict in his favor. But a fraudulent sale and transfer of property may be proven by showing the existence of other facts or circumstances surrounding or connected with the transaction tending to show a fraudulent intent on the part of the parties to such sale or conveyance, or tending to show a purpose not consistent with an honest intent; and if you find from the

46

evidence that the stock of goods in controversy was sold by the said Thomas Upton to the plaintiff, and if you further find from the evidence that said Thomas Upton and the plaintiff intended by such sale and transfer to hinder and delay and defraud the creditors of said Thomas Upton and not to secure the payment only of an actual and honest indebtedness of said Upton to said Williams, then, and if you so find, your verdict should be for the defendant." Manifestly this instruction was prejudicially erroneous. It advised the jury, in effect, that if the defendant established by a preponderance of the evidence fraud in either one of the sales—the sale from Williams to Upton, or that from the latter to the former—then the defendant was entitled to a verdict. Upon the trial no evidence was given tending in the least to impeach the sale of the stock from Williams to Upton, but the good faith of that transaction was established beyond controversy. Had that sale been never so fraudulent, it would not have justified a verdict in favor of the sheriff, since the property was attached as belonging to Upton, and he acquired no title except as through Williams. In the language of counsel for plaintiff: "If the transaction of sale from Williams to Upton was fraudulent, the attachment plaintiffs ratified and confirmed it. They are in no position to question it in the least. They had no dealings with Williams at all. They had none with Upton until after he acquired the stock from Williams. Even if the acquisition of the stock by Upton from Williams was fraudulent, the attachment plaintiffs were not prejudiced thereby. They can gain no rights by impeaching the title of Upton. Their claim must necessarily be through Upton. They may not at one and the same time impeach his title and found rights upon it. They may not at once both reprobate and approbate; 'blow hot and cold.'" As the sale from Williams to Upton was not and could not be assailed by the defendant, the instruction was clearly misleading. It submitted to the jury a question not before them. Instructions should be confined to the issues in

the case. (*Frederick v. Kinzer,* 17 Neb. 366.)   While it is true, as argued by counsel for defendant, that instructions must be construed together, yet an erroneous paragraph of a charge is not cured by another instruction stating the rule correctly. (*Carson v. Stevens,* 40 Neb. 112; *Richardson v. Halstead,* 44 Neb. 606; *Metz v. State,* 46 Neb. 547.)   For the reason stated the judgment is

REVERSED.